UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-3045(DSD/SRN)

M.Y., by and through her
Parents, J.Y. and D.Y.,

       Plaintiffs,

v.                                        **ORDER**

Special School District No. 1,
Minneapolis Public Schools and
Adbihakim Mohamed Isse,

       Defendants.


    Margaret O'Sullivan Kane, Esq. and Kane Education Law, LLC, 1654 Grand Avenue, Suite 200, St. Paul, MN 55105, counsel for plaintiffs.

    Margaret A. Skelton, Esq., Isaac Kaufman Esq. and Ratwik, Roszak & Maloney, 730 Second Avenue South, Suite 300, Minneapolis, MN 55402, counsel for defendants.


This matter is before the court upon defendant's motion for summary judgment [Doc. No. 28]. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.


**BACKGROUND**

M.Y. is a fifteen year old female student who has attended public schools in the Special School District No. 1 ("District") since at least 2001. She attended Loring Elementary until beginning at the W. Harry Davis Academy ("Academy") in the fall of

2004. M.Y. qualifies for special education services under the Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. § 1400 et seq. Until May 2005, M.Y.'s Individualized Education Programs ("IEP") consistently required that she receive curb-to-curb busing to and from school during the regular school year. (D.Y. Aff.[1]) M.Y. also received the assistance of a one-to-one aide during the regular school year.[2] M.Y. has not qualified for extended school year ("ESY") services since 2001, but she attended regular education summer school during the summers of 2002-2004, 2006 and 2007 and received special education transportation during each of those summers.[3] (D.Y. Aff.)

M.Y.'s May 18, 2004, IEP provides that she "needs to be driven to school on a special education bus. She requires curb to curb transportation with an educational assistant riding the bus to and from school. Her teachers and parents are concerned about her welfare." (Pl. Ex. No. 1.) At an IEP team meeting on May 12, 2005, the IEP team altered M.Y.'s special education transportation

---

[1] "D.Y. Aff." refers to the Corrected Amended Affidavit of D.Y.

[2] The one-to-one aide was removed at the end of the 2004-2005 school year, but was later reinstated in the middle of the 2005-2006 school year at the insistence of M.Y.'s special educator. (D.Y. Aff. 2.) M.Y.'s March 9, 2006, IEP, however, does not provide for a one-to-one aid.

[3] As discussed below, M.Y. attended only the first three days of summer school in 2005 as a result of the incident at issue in this case.

by removing the provision requiring an educational assistant and providing that M.Y. would use general education transportation when attending general education activities. (Def. Ex. J.) D.Y., M.Y.'s mother, signed her approval on May 18, 2005. (Def. Exs. H, J.) However, it was not until D.Y. received a postcard on June 18, 2005, that she realized M.Y. would be required to use general education transportation for summer school. (Def. Ex. H.) As a result, when M.Y. began summer school on June 20, 2005, she was required to use general education transportation, which dropped M.Y. off and picked her up at a stop a half block from her home. (Def. Ex. H.)

When M.Y. was returning home from summer school on June 23, 2005, the school bus driver, Abdhihakim Isse ("Isse"), allegedly left his normal route to M.Y.'s bus stop and sexually assaulted M.Y. (Def. Exs. K, O.) After M.Y. notified D.Y. of the incident that evening, D.Y. and J.Y., M.Y.'s father, immediately called the police. (Def. Ex. H.) The District learned of the incident when the police department contacted the Department of Transportation Services for Minneapolis Public Schools on June 24, 2005. (Def. Ex. L.) The District notified Isse on June 29, 2005, that he was suspended with pay effective June 27, 2005, and on October 26, 2005, notified Isse that he was suspended without pay effective September 30, 2005. (Def. Exs. M, N.)

The District orally contacted the Minnesota Department of Education ("MDE") on June 24, 2005, and submitted a Maltreatment of Minors report three days later.  As a result, the MDE conducted a Maltreatment of Minors investigation.  (Def. Ex. O.)  The MDE concluded that there was no maltreatment on the part of the Academy because it "did not have any prior knowledge of any inappropriate sexual touching by [Isse]," and because of the lack of comparative responsibility between the Academy and Isse.  (Id.)  The MDE affirmed this conclusion upon reconsideration, further concluding that the Academy had complied with the proper policies in hiring and training Isse, that the Academy had no notice that Isse would sexually assault a student,[4] that Isse had no restrictions that would have prevented him from driving a special education school bus and that at the time of the incident M.Y.'s IEP did not provide for special education transportation.  (Def. Ex. P.)  The maltreatment investigation did, however, conclude by a preponderance of the evidence that Isse committed maltreatment.[5]

---

[4] The MDE specifically found that Isse successfully completed a background check, that Isse had not had any complaints since he began working for the District in 2000 and that there was no documentation related to sexual misconduct by Isse.  (Def. Ex. P.)

[5] According to the July 5, 2006 maltreatment investigation report, Isse has been charged with two counts of criminal sexual conduct and there has been a warrant out for his arrest since October 2005, but his whereabouts as of the date of the report were unknown.  (Def. Ex. O.)  This order addresses only the claims that M.Y. has asserted against the District.

---

(Def. Ex. O.)  The District terminated Isse's employment effective September 26, 2006.  (Hixson Aff.)

On June 19, 2006, M.Y. filed an 11-count complaint in state court alleging violation of the United States Constitution and several federal laws including Section 504 of the Rehabilitation Act of 1973 and 42 U.S.C. § 1983.[6]  In addition, the complaint asserted state law claims for violation of the Minnesota Human Rights Act ("MHRA"), the Maltreatment of Minors Reporting Act, sexual assault and battery, intentional infliction of emotional distress, loss of consortium and the Minnesota Constitution.[7]  The District removed the case to federal court on July 18, 2006.  On June 1, 2007, the District filed a motion for summary judgment on all counts.

**DISCUSSION**

**I.    Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

---

[6] M.Y. voluntarily withdrew count one alleging violation of Title IX of the Educational Amendments of 1972.

[7] M.Y. voluntarily withdrew count ten of the complaint alleging negligent infliction of emotional distress.

5

to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id.

**II. Administrative Exhaustion**

The District argues that M.Y.'s Rehabilitation Act and § 1983 claims must be dismissed because M.Y. failed to exhaust the administrative remedies required by IDEA. M.Y. responds that her claims are wholly unrelated to the IDEA process, that the remedies she is seeking are not available under IDEA and that she is therefore under no duty to exhaust administrative remedies before pursuing judicial action.

Congress enacted IDEA to ensure that all children with disabilities have access to a free and appropriate public education ("FAPE"). 20 U.S.C. § 1400(d). IDEA seeks to accomplish this objective through a complex statutory framework that grants substantive and procedural rights to children and their parents. See Winkelman v. Parma City Sch. Dist., 127 S. Ct. 1994, 1999-2005 (2007). Under this framework, challenges based on IDEA violations must be brought pursuant to IDEA's administrative procedures. 20 U.S.C. § 1415(f)-(g). IDEA does not "restrict or limit the rights, procedures, and remedies available under ... other Federal laws protecting the rights of children with disabilities." 20 U.S.C. § 1415(l). It does, however, require that plaintiffs exhaust administrative procedures to the same extent provided for in IDEA when "seeking relief that is also available" under IDEA. 20 U.S.C. § 1415(l).

### A.  Rehabilitation Act and § 1983 Claims Are Not Wholly Unrelated to the IEP Process

If a student qualifies for special education services, a school district must convene a team to develop an IEP that identifies the services the child will receive. 20 U.S.C. § 1414(d). FAPE decisions are those involving special education and related services - including transportation - that "are provided in conformity with the [IEP]." 20 U.S.C. § 1401(9)(D); 34 C.F.R. § 300.34. A plaintiff need not exhaust IDEA's administrative procedures when pursuing a non-IDEA claim if the

claim is "wholly unrelated to the IEP process, which involves individual identification, evaluation, educational placement, and [FAPE] decisions." M.P. v. Ind. Sch. Dist. No. 721, 439 F.3d 865, 868 (8th Cir. 2006).

### 1. Section 504 of the Rehabilitation Act

Section 504 of the Rehabilitation Act prohibits discrimination by governmental actors on the basis of disability. It provides in relevant part that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To make a prima facie case under Section 504, a plaintiff must show among other things that she "was discriminated against based on her disability." Timothy H. v. Cedar Rapids Cmty. Sch. Dist., 178 F.3d 968, 971 (8th Cir. 1999). A plaintiff must also show that the discrimination reflected bad faith or gross misjudgement. M.P., 439 F.3d at 868.

In her complaint, M.Y. asserts that the District acted "intentionally and with deliberate indifference to [M.Y.'s] rights as a student with a disability, including being denied her educational and non-academic benefits and services by reason of her disabilities in violation of Section 504." (Compl. 9.) M.Y. failed to explain this statement in her memorandum in opposition to

8

the District's motion for summary judgment. Presumably, M.Y.'s claim under Section 504 is that by not providing her with special education transportation, the District discriminated against her because of her disability. The issue of special education transportation is a FAPE decision that is specifically addressed in M.Y.'s IEP. Therefore, M.Y.'s Section 504 claim is not wholly unrelated to the IEP process.

### 2.   42 U.S.C. § 1983

A municipality can be held liable for a constitutional violation under § 1983 if the violation was committed pursuant to an official "policy or custom." See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690 (1978); Granda v. City of St. Louis, 472 F.3d 565, 568 (8th Cir. 2007).

M.Y. asserts that Isse's sexual assault against her violated her substantive due process rights under the Fourteenth Amendment and that this violation was committed pursuant to the District's custom or policy of not providing special education transportation for general education activities. (Pl's. Mem. Opp. S.J. 16, 19.) In the alternative, M.Y. alleges that the constitutional violation was committed pursuant to the District's failure to train or supervise its employees with respect to special education transportation.[8]  (Id. 19.)  In either case, the claim is not

---

[8] In her complaint, M.Y. also alleges that the District's failure to investigate claims of sexual misconduct by employees
(continued...)

9

wholly unrelated to the IEP process because the provision of transportation services is a FAPE decision. Whether the District engaged in a custom or policy pursuant to which M.Y. was sexually assaulted requires a determination of whether the District wrongfully withheld special education transportation. This determination is directly related to the IEP process. Therefore, M.Y.'s § 1983 claim is not wholly unrelated to the IEP process.

**B.   Relief Sought**

M.Y. argues further that administrative exhaustion is not required because she is seeking monetary damages unavailable under IDEA. See Heidemann v. Rother, 84 F.3d 1021, 1033 (8th Cir. 1996) (noting that general and punitive damages are not available under IDEA). The District argues that administrative exhaustion is still required even though M.Y. seeks relief not available under IDEA.

Administrative exhaustion "permits agencies 'to exercise discretion and apply their expertise, ... allows complete development of the record before judicial review, ... prevents parties from circumventing the procedures established by Congress, and ... avoids unnecessary judicial decisions by giving the agency an opportunity to correct errors.'" Blackmon v. Springfield R-XII Sch. Dist., 198 F.3d 648, 656 (8th Cir. 1999) (quoting Urban v. Jefferson County Sch. Dist. R-1, 89 F.3d 720, 724 (10th Cir.

---

[8](...continued)
forms the basis of liability. Although this claim would be wholly unrelated to the IEP process M.Y. does not pursue the argument.

1996)). These benefits of exhaustion are substantial and courts only forego the exhaustion requirement if it would be futile, if the administrative remedies are unable to provide adequate relief, or if an agency practice or policy of general applicability is contrary to law. Id.

A plaintiff is not excused from IDEA's exhaustion requirement simply by requesting relief that IDEA does not provide. See Charlie F. v. Bd. of Educ., 98 F.3d 989, 991-92 (7th Cir. 1996) ("[W]hat relief is 'available' does not necessarily depend on what the aggrieved party wants.").[9] Rather, a court's primary concern is the source and nature of the alleged injuries for which the remedy is sought. Padilla, 233 F.3d at 1274. Therefore, the proper inquiry is "whether the plaintiff has alleged injuries that

---

[9] The Eighth Circuit Court of Appeals has not addressed the specific issue of whether exhaustion of administrative remedies under IDEA is required even though a plaintiff is seeking relief not afforded by IDEA. Other circuits, however, have addressed the issue. Compare Covington v. Knox County Sch. Sys., 205 F.3d 912, 917 (6th Cir. 2000) (exhaustion not required because futile under "unique circumstances" of the case), Witte v. Clark County Sch. Dist., 197 F.3d 1271, 1275 (9th Cir. 1999) (exhaustion not required where plaintiff seeks money damages and all educational issues were already resolved), and Padilla v. Sch. Dist. No. 1, 233 F.3d 1268, 1274 (10th Cir. 2000) (exhaustion not required because relief provided by IDEA could not address plaintiff's "completely non-educational injuries."), with Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 64 (1st Cir. 2002) (exhaustion required for § 1983 action based on IDEA violation), Polera v. Bd. of Educ., 288 F.3d 478, 488 (2d Cir. 2002) (exhaustion required because IDEA was intended to "remedy precisely the sort of claim" made by plaintiff), and Charlie F., 98 F.3d at 993 (exhaustion required where the "genesis and the manifestations of the problem are educational."). This court finds the approach taken by the Seventh and Tenth Circuits well-reasoned and will apply it to this case.

could be redressed to any degree by the IDEA's administrative procedures and remedies." Id. "Where the IDEA's ability to remedy a particular injury is unclear, exhaustion should be required in order to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem." Id. (citing Charlie F., 98 F.3d at 992-93).

M.Y. seeks damages to redress injuries resulting from Isse's alleged sexual assault, not from her deprivation of special education transportation.[10] In other words, M.Y. does not allege that her deprivation of special education transportation to attend summer school injured her. Rather, she argues that the deprivation of transportation led to the sexual assault that caused her injuries. In these narrow circumstances, IDEA's remedies do not address the noneducational injuries asserted by M.Y. Therefore, M.Y. is not required to exhaust her administrative remedies under IDEA.

**III. Section 504 and Minnesota Human Rights Act Claims**

To make a prima facie case under Section 504, a plaintiff must show among other things that she "was discriminated against based

---

[10] M.Y.'s complaint seeks money damages "to overcome the effects of the discrimination, indignity, emotional harm, out-of-pocket costs and impaired earning capacity." (Compl. 15.) M.Y. also asserts that "[t]he request for monetary relief is to award damages for the injuries that were sustained by [M.Y.] as a result of her seizure, sexual assault, and the deprivation of her personal liberty, property and right to be free from offensive bodily intrusions." (Pl. Mem. Opp. S.J. 11.)

12

on her disability." Timothy H. v. Cedar Rapids Cmty. Sch. Dist., 178 F.3d 968, 971 (8th Cir. 1999). A plaintiff must also show that the discrimination reflected bad faith or gross misjudgement. M.P. v. Ind. Sch. Dist. No. 721, 439 F.3d 865, 868 (8th Cir. 2006) (citing Monahan v. Nebraska, 687 F.2d 1164, 1171 (8th Cir. 1982)). The MHRA prohibits discrimination "in the access to, admission to, full utilization of or benefit from any public service because of ... disability." Minn. Stat. § 363A.12, subd. 1. The analysis under the MHRA and the Rehabilitation Act are the same. See Yeng Thao v. City of St. Paul, 481 F.3d 565, 567 n.3 (8th Cir. 2007); Moubry v. Ind. Sch. Dist. 696, 9 F. Supp. 2d 1086, 1110 (D. Minn. 1998).

In her complaint, M.Y. stated that the District acted "intentionally and with deliberate indifference to [her] rights as a student with a disability, including being denied her educational and non-academic benefits and services by reason of her disabilities in violation of Section 504." However, M.Y. did not address the District's argument in opposition to her section 504 claim.[11] Moreover, she has not provided any evidence showing that the District discriminated against her because of her disability, or that the District acted with bad faith or gross misjudgment.

---

[11] The court presumed the validity of M.Y.'s Section 504 argument for purposes of the exhaustion argument above. In addressing the merits of the claim, however, the court will not consider arguments that M.Y. has failed to pursue or provide evidence to support.

Because M.Y. has presented no evidence to establish a genuine issue of material fact, the court finds that summary judgment as to M.Y.'s section 504 and MHRA claims is warranted.

**IV. Section 1983 Claim**

M.Y. contends that Isse sexually assaulted her pursuant to the District's unconstitutional customs or policies.

Section 1983 provides in relevant part that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Municipalities are considered persons under section 1983 and are thus subject to liability for constitutional violations. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690 (1978). To establish municipal liability a plaintiff must show that a constitutional violation was committed pursuant to an official "policy or custom." Id. at 694; Granda v. City of St. Louis, 472 F.3d 565, 568 (8th Cir. 2007). "The first task in applying Monell is to identify what the governmental body's policy is. The second task is to determine whether that policy is unconstitutional." Dick v. Watonwan County, 738 F.2d 939, 943 (8th Cir. 1994).

M.Y. argues that the District maintains a custom or policy of denying special education transportation to special education students when they attend general education activities. Even if there was sufficient evidence to establish that the District maintains such a policy, M.Y. has provided no legal authority suggesting that it would be unconstitutional. Furthermore, M.Y. has not established that Isse assaulted her pursuant to the alleged custom or policy. In other words, M.Y. has not established the requisite nexus between the District's alleged custom or policy of denying special education transportation and Isse's sexual assault.

M.Y. makes two alternative arguments. First, she argues that the District maintained a custom or policy of failing to train or supervise its employees with respect to the provision of special education transportation. M.Y., however, has provided no evidence or legal authority to support this argument. Second, M.Y. argues that the District "maintained an inadequate system of investigating, reporting, or taking appropriate remedial action regarding the sexual misconduct or allegations of sexual misconduct by District teachers, employees, and administrators against students of the District." The record, however, demonstrates the opposite. Upon learning of the incident, the District immediately filed a Maltreatment of Minors Report, cooperated in the

investigation of the incident and ultimately terminated Isse. Thus, there is nothing in the record to support M.Y.'s allegation. Accordingly, summary judgment is warranted on M.Y.'s § 1983 claim.[12]

**V.   M.Y.'s Remaining State Law Claims**

    **A.   Maltreatment of Minors Act**

M.Y. alleges that the District violated Minnesota's Maltreatment of Minors Act because it "did not make a good faith effort to make an incident report or conduct an investigation regarding" Isse's sexual misconduct.  The District argues that it properly complied with all requirements under the Act.

The Maltreatment of Minors Act requires that a school district's employees make an immediate oral report to "the agency responsible for assessing or investigating the report," if the employee "knows or has reason to believe a child ... has been neglected or physically or sexually abused within the preceding three years."  Minn. Stat. § 626.556, subd. 3(a)(1).  Within 72 hours of the oral report, a written report must be submitted. Minn. Stat. § 626.556, subd. 7.

---

[12] M.Y. also asserts violations of her Fourth Amendment "right to be free in her person against unreasonable searches, seizures, and invasions of privacy," and her "equal protection rights under the United States constitution."  M.Y., however, did not plead these claims under § 1983. See Bishop v. Tice, 622 F.2d 349, 356 (8th Cir. 1980) ("By enacting section 1983, Congress has provided an appropriate and exclusive remedy for constitutional violations committed by municipalities.").  Even if M.Y. had properly pleaded these claims, they would not survive summary judgment because Isse did not sexually assault M.Y. pursuant to a District custom or policy.

Here, the Minnesota Department of Education acknowledged receipt of an oral report the day after the incident and a written report was submitted on June 27, 2005. M.Y. has presented no evidence to rebut the District's compliance with the Maltreatment of Minors Act. Accordingly, summary judgment for the District is warranted on this claim.

**B.   Vicarious Liability**

M.Y. asserts that the District is vicariously liable for Isse's alleged sexual assault and battery and intentional infliction of emotional distress. Moreover, M.Y. claims that the District is vicariously liable for her parents loss of society and services and the medical expenses incurred as a result of Isse's alleged assault. The District responds that it is not vicariously liable because Isse was not acting within the scope of his employment at the time of the alleged sexual assault.

An employer is vicariously liable for the torts of its employee when the tort "is related to the duties of the employee and [occurs] within work-related limits of time and place." Lange v. Nat'l Biscuit Co., 211 N.W.2d 783, 786 (Minn. 1973). A tort is related to the duties of the employee even if it "would not be imputable to the [employer]," so long as it is "so connected with and immediately grows out of another act of the [employee] imputable to the [employer], that both acts are treated as one indivisible tort." Id. at 785-86. "[W]here sexual assaults by

17

employees in a particular profession are a foreseeable risk of that profession, a sexual assault may be considered 'related to' the employee's duties." Longen v. Fed. Express Corp., 113 F. Supp. 2d 1367, 1371 (D. Minn. 2000) (gathering Minnesota cases). A plaintiff, however, must bring forth some evidence suggesting that sexual assaults by employees are a "well-known hazard." P.L. v. Aubert, 545 N.W.2d 666, 668 (Minn. 1996); see also Fahrendorff v. North Homes, Inc., 597 N.W.2d 905, 911-12 (Minn. 1999); Marston v. Minneapolis Clinic of Psychiatry and Neurology, 329 N.W.2d 306, 311 (Minn. 1982).

M.Y. argues that her vulnerabilities as reflected in her IEP put the District on notice of her susceptibility to being sexually assaulted. This argument, however, conflates the foreseeability inquiry for negligence with that for vicarious liability. The Minnesota Supreme Court adopted California's distinction between the two inquiries as follows:

> 'foreseeability' in [the vicarious liability] context must be distinguished from 'foreseeability' as a test for negligence. In the latter sense 'foreseeable' means a level of probability which would lead a prudent person to take effective precautions whereas 'foreseeability' as a test for [vicarious liability] merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.

Fahrendorff, 597 N.W.2d at 912.

18

Thus, the District's knowledge of M.Y.'s vulnerabilities as reflected in her IEP would be relevant in a negligence action against the District, but it is not relevant to determine whether it would be fair to include the loss resulting from Isse's actions among the District's costs of providing public education.[13] Because M.Y. has brought forth no evidence suggesting that sexual assault between bus drivers and school children is a well-known hazard, summary judgment in favor of the District is warranted.

### C.   Minnesota Constitution

M.Y. also argues that the District violated her equal protection rights and right to be free from unreasonable searches, seizures and invasions of privacy under the Minnesota Constitution. M.Y., however, has offered no cogent arguments or legal authority to support her allegations.  Therefore, summary judgment as to M.Y.'s claims under the Minnesota Constitution is warranted.

---

[13] Similarly, it is unnecessary to account for the evidence provided by the District that it followed proper protocol in hiring Isse and that it had no notice that Isse might sexually assault a student.

**CONCLUSION**

Accordingly, based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 28] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated:  September 18, 2007

                                          s/David S. Doty
                                          David S. Doty, Judge
                                          United States District Court